1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRINIDAD RUIZ,** | Civil No. 10cv2023-MMA (BGS) |
| Plaintiff, | **REPORT AND RECOMMEDATION TO: (1) DENY IN PART AND GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security | |
| Defendant. | **[Doc. Nos. 18, 19]** |

18

## I.   INTRODUCTION

19

       On September 29, 2010, Trinidad Ruiz ("Plaintiff") filed a complaint pursuant to the Social

20

Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the denial of disability benefits by the

21

Commissioner of the Social Security Administration ("Commissioner" or "Defendant").  (ECF

22

No. 1.)  On July 25, 2011, the Commissioner filed an answer to Plaintiff's complaint.  (ECF No.

23

12.)  Currently before the Court is Plaintiff's motion for summary judgment requesting that the

24

Court reverse the Administrative Law Judge's ("ALJ") decision and remand for payment of

25

benefits, or, in the alternative, reverse and remand the case to the Social Security Administration

26

for further proceedings and a decision in accordance with the applicable law.  (ECF No. 18.)  On

27

October 24, 2011, the Commissioner filed a cross-motion for summary judgment and a response

28

in opposition to Plaintiff's motion.  (ECF Nos. 19-20.)  Plaintiff did not file a reply to the

Commissioner's opposition or oppose the Commissioner's cross-motion.

Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions can be decided on the papers and without oral argument. After careful consideration of the papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** in part and **GRANTED** in part, and that the Commissioner's cross-motion for summary judgment be **DENIED**. The Court **RECOMMENDS** that the case be **REMANDED** to the Social Security Administration for further proceedings.

## II.  FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for a period of disability and disability insurance benefits on May 31, 2005, alleging disability beginning on October 26, 2004. (Administrative Record ("AR") 55.) Plaintiff's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. (Id.) ALJ Godfrey held a hearing and on March 28, 2007, issued an order finding Plaintiff had severe impairments including chronic back pain and depressive disorder not otherwise specified. ALF Godfrey further found that Plaintiff could perform sedentary exertional level work with simple and repetitive tasks and because jobs existed in the national economy that Plaintiff could perform, she was not disabled. (AR 55-62.) Plaintiff appealed this decision to the Appeals Council, but her request for review was denied. (AR 67.)

On June 6, 2007, Plaintiff filed a second Title II application for disability insurance benefits alleging disability beginning March 29, 2007. (AR 11.) Plaintiff's application was denied initially and upon reconsideration on May 22, 2008. (Id.) On May 28, 2008, Plaintiff filed a request for a hearing before the ALJ. (Id.) ALJ Trembly held a hearing on July 16, 2009. (AR 11.)

Plaintiff personally appeared at the hearing and was represented by attorney Henry N. Ernecoff. (Id.) Mary E. Jesko, an impartial vocational expert, also appeared at the hearing but did not testify. (Id.) On September 30, 2009, the ALJ issued a decision concluding that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act, and therefore not eligible for disability insurance benefits. (AR 20.) On July 26, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 67.)

**A. Hearing Testimony**

At the hearing, Plaintiff testified that she takes Motrin for her back problems, Effexor and Xanex for anxiety, and an unidentified anti-psychotic medication.  (AR 35, 38-40.)  She also takes Ambien because she cannot sleep more than two hours without the medication.  (AR 46.)  About a month before the hearing she started taking the anti-psychotic medication for her hallucinations and paranoia.  (AR 39-40.)  She has not tried to do any kind of work since her last job as a dental assistant in 2005.  (AR 43-44.)  Plaintiff contends that she does not trust anyone and cannot usually leave the house by herself.  (AR 37.)  She attributed her paranoia to a molestation incident that occurred when she was eight.  (Id.)  Plaintiff said she has hallucinations of her grandmother and cousin who tell her that people are bad and not to leave the house.  (AR 41.)  She received professional mental help beginning when she was 18 years old.  (AR 37.)  Ms. Ruiz claimed that she would kill herself if it were not for her children.  (AR 42.)  She said she no longer drives because she was in an accident and is afraid she may hit a person.  (Id.)  She added that she feels distracted by the hallucinations when driving.  (AR 43.)  Plaintiff testified that she "decompensates" more than three times a year.[1]  (AR 45.)  She has never been hospitalized.  (Id.)

**B. Medical Record**

**1. Kaiser Permanente Progress Notes on 10/11/2007**

At the request of the Department of Social Services, Kaiser Permanente provided progress notes dated October 11, 2007, showing that Plaintiff complained that "every little thing" was

---

[1] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence. Disability Evaluation Under Social Security, http://www.socialsecurity.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited July 19, 2012).

upsetting her and that she was "tired of feeling depressed." (AR 289.) Plaintiff's symptoms included ongoing fatigue, unremitting depressed mood, increased forgetfulness, mood irritability, ongoing anxiety attacks (but reported that her attacks were less frequent), explosive episodes of diarrhea, and headaches. (Id.) The mental status exam revealed that Plaintiff's mood was depressed and her affect was congruent. (Id.) The diagnosis was mild, recurrent, major depression. (AR 290.)

**2. Shahzad Ahmed Khan, M.D. on 12/21/2007**

At the request of the Department of Social Services, Dr. Dan Funkenstein provided medical records of a psychiatric pharmacologic management office visit conducted by Dr. Khan. (AR 385.) Plaintiff reported "things are about the same" and that she feels demoralized most of the time. (Id.) Dr. Khan, however, noted that Plaintiff was feeling better overall and since taking Effexor, she felt less irritable, has fewer crying spells, and has an improved mood. (Id.) Additionally, she did not have suicidal ideation, intent, or plan. (Id.) Plaintiff's diagnosis was anxiety disorder (not otherwise specified ("NOS")) and recurrent, major depression. (Id.)

**3. Gregory M. Nicholson, M.D. on 5/1/2008**

At the request of the Department of Social Services Disability & Adult Programs, Dr. Nicholson, a board eligible psychiatrist evaluated Plaintiff on May 1, 2008. (AR 421.) Plaintiff's chief complaint was anxiety. (Id.) Plaintiff told Dr. Nicholson that she was raped by her brother and grandfather when she was four years old and was still bothered by memories and nightmares about being raped. (Id.) Her symptoms included depressed mood, insomnia, decreased appetite, trouble concentrating, decreased energy, decreased interest in normal activities, and suicidal tendencies. (AR 421-22.) Plaintiff reported three prior suicide attempts. (AR 422.) Plaintiff also reported hallucinations and paranoia. (Id.) Her medications at that time consisted of Effexor, Wellbutrin, Ambien, and Xanax. (Id.) Plaintiff's daily activities included household chores, gardening, cooking, dressing and bathing herself, going to the store, and running errands. (AR 423.) She reported being able to drive, pay bills, handle cash appropriately, and go out on her own. (Id.) According to her mental status examination, Plaintiff's mood was depressed and her affect was tearful and dysphoric. (AR 424.) Her diagnosis included psychotic disorder NOS,

anxiety disorder NOS, and major depressive disorder.  (AR 425.)

With respect to Plaintiff's functional assessment, Dr. Nicholson reported, that she was able to understand, remember, and carry out simple one or two-step job instructions and also able to complete detailed and complex instructions.  (AR 426.)  Plaintiff was only moderately limited in her ability to relate and interact with coworkers and the public; maintain concentration and attention, persistence, and pace; and associate with day-to-day work activity including safety and attendance.  (AR 426-27.)  She was mildly limited in her abilities to accept instructions from supervisors and perform work activities without special or additional supervision.  (AR 427.)

**4.  Jaime Ivan Arroyo, M.D. on 5/30/2008**

On May 30, 2008, Dr. Arroyo saw Plaintiff for back pain.  (AR 487.)  Plaintiff reported chronic pain in her left low lumbar area.  (Id.)  Dr. Arroyo noted that in February 2005 an MRI revealed a moderate degree of spondylosis without stenosis or herniated disc at the L4-L5 and L5-S1.  (Id.)  Plaintiff had mild tenderness in response to palpation of the left lumbar area.  (AR 488.)  Flexion was normal to 90 degrees but included mild left lumbar pain.  (Id.)  Left straight leg raising indicated left thigh pain.  (Id.)  Motor strength and gait were normal.  (Id.)  Dr. Arroyo's assessment was chronic low back pain and lumbar radiculopathy.  (Id.)

**5.  James W. Gaudet, M.D. on 3/18/2009**

On March 18, 2009, Dr. Gaudet, a psychiatrist, saw Plaintiff for complaints of depression.  (AR 506.)  Plaintiff stated that she was "doing ok," and had been looking for a job.  (Id.)  Plaintiff reported economic, family, and emotional stressors.  (Id.)  Her current medications included Ibuprofen, Venlafaxine (generic Effexor), Omeprazole, Metoclopramide, Robinul, and Imetrex.  (AR 507.)  On the mental status exam, Plaintiff's affect was appropriate and mildly constricted.  (Id.)  Her mood was down, mildly worse.  (Id.)  Her activity, gait, speech, and judgment were normal.  (Id.)  Her thought process was coherent, logical, and relevant.  (Id.)  She denied suicidal ideation, plan, or intent, homicidal ideation, plan, or intent, and had no psychotic or inappropriate thought content.  (Id.)  Sensory was alert and clear, cognitive was intact, and insight was good.  (Id.)  Dr. Gaudet diagnosed Plaintiff with major, recurrent, moderate depression and anxiety disorder.  (AR 508.)

**6.  Grace M. Caluya, LCSW on 4/13/2009**

On April 13, 2009, Grace Caluya, LCSW, saw Plaintiff for psychotherapy.  (AR 503.)
Plaintiff's complaints were anxiety disorder and depression.  (Id.)  Ms. Caluya observed that
Plaintiff's mood and affect appeared depressed.  (Id.)  Plaintiff denied any hallucinations,
delusions, grandiosity, paranoia, or other psychotic symptoms.  (Id.)  She had good cognition,
insight, judgment, and impulse control.  (Id.)  She denied suicidal ideation, suicidal attempt,
homicidal ideation, and homicidal attempt.  (Id.)  Ms. Caluya reported that Plaintiff's overall
impairment and severity of symptoms was mild to moderate.  (Id.)  Plaintiff was also receiving
supportive counseling and was no danger to self or others.  (Id.)  Plaintiff was compliant with
medication plan and reported no adverse side effects.  (Id.)  Assessment was anxiety disorder and
major, recurrent, moderate depression, with a history of sexual abuse.  (AR 504.)

**7.  Mental Residual Functional Capacity Form ("MRFCF") completed on 7/14/2009**

On July 14, 2009, Ms. Caluya completed a MRCF that was signed by Dr. Gaudet.  (AR 526-
29.)  The MRFCF indicated that Plaintiff was "Markedly Limited" in her abilities to: remember
locations and work-like procedures; understand and remember very short and simple instructions;
understand and remember detailed instructions; carry out very short and simple instructions;
maintain attention and concentration for extended periods; sustain an ordinary routine without
special supervision; work in coordination with or proximity to others without being distracted by
them; make simple work-related decisions; complete a normal workday and work week without
interruptions from psychologically based symptoms and to perform pace without an unreasonable
number and length of rest periods; accept instructions and respond appropriately to criticism from
supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral
extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use
public transportation; and set realistic goals or make plans independently of others.  (Id.)  The
MRFCF also indicated that Plaintiff was "Moderately Limited" in her ability to interact
appropriately with the general public.  (AR 528.)  The written comments noted that Plaintiff
required an accompanying family member to run errands and that she experienced auditory
hallucinations which affected her ability to sustain focus and concentration.  (AR 527.)

The MRFCF indicated that Plaintiff's restrictions on activities of daily living were marked to extreme, difficulties in maintaining social functioning were marked, and difficulties in maintaining concentration, persistence, or pace were extreme.  (Id.)  The MRFCF also showed that Plaintiff had three repeated episodes of decompensation, each of extended duration.  (Id.)

**C. ALJ's Findings and Conclusions in 2007—Plaintiff's First Disability Claim**

On March 28, 2007, ALJ Godfrey issued a decision finding that Plaintiff had "severe" impairments including chronic back pain and depressive disorder of non-specified origin.  (AR 57.)  The ALJ further determined that Plaintiff had the residual functional capacity to do sedentary exertional level work with simple repetitive tasks with minimal contact with others. (AR 58.)  ALJ Godfrey found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (Id.)  The prior ALJ reasoned that none of Plaintiff's physicians had opined that she is totally and permanently disabled from any kind of work, thus, her allegations were not credible to establish a more restrictive functional capacity.  (AR 60.)  The decision concluded that Plaintiff was not disabled and not entitled to benefits.  (AR 62.)

**D. ALJ's Findings and Conclusions in 2009—Present Disability Claim**

First, the ALJ addressed Plaintiff's previous application for disability benefits and found that the principles of administrative res judicata applied because Plaintiff did not present new medical evidence to establish a change in circumstances that could overcome the presumption of continuing non-disability.  (AR 11.)

Next, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 29, 2007, the alleged disability onset date.  (AR14.)  Despite concluding that Plaintiff had not presented changed circumstances to rebut the presumption of non-disability, the ALJ went on to conduct the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  As a result of the evaluation, the ALJ found that Plaintiff had severe impairments including L4-5 and L5-S1 spondylosis and major depressive disorder.  (Id.)  The ALJ concluded that Plaintiff's impairment or combination or impairments do not meet or equal any of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1.  (Id.)  The ALJ also specifically discussed why

1   Plaintiff's mental impairment did not meet or medically equal the criteria of § 12.04 or § 12.09.

2   (Id.)

3        In addition, the ALJ found that Plaintiff's "medically determinable impairments could

4   reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the

5   intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

6   inconsistent with the above residual functional capacity assessment." (AR 17.)  The ALJ

7   provided three "clear and convincing" reasons for rejecting the claimant's allegations of disabling

8   pain, symptoms, and limitations.  First, the objective medical evidence of record did not support

9   impairments likely to produce disabling pain or limitation.  (AR 17-18.)  Second, there was no

10  evidence that the Plaintiff underwent regular therapy or other treatment that would be consistent

11  with the alleged severity of her complaints.  (AR 18.)  Third, the Plaintiff did not allege an

12  inability to provide for her own care.  (Id.)  The ALJ gave weight to the May 1, 2008 report from

13  Dr. Nicholson that indicated that Plaintiff's daily activities consisted of doing household chores,

14  gardening, cooking, making snacks, dressing and bathing herself, going to the store, and running

15  errands, as well as that Plaintiff was able to drive, pay bills, and handle cash appropriately.  (AR

16  423.)

17       Further, the ALJ found no reason to give controlling weight to the opinion of Dr. James

18  Gaudet as a treating source and determined that the doctor's July 14, 2009 opinion set forth in the

19  MRFCF was "inconsistent" and "excessive." (AR 18.)  The ALJ further stated that Dr. Gaudet's

20  conclusions were contrary to and unsupported by the substantial medical evidence of record,

21  including his own progress notes.  (Id.)

22       The ALJ found that the Plaintiff was unable to perform past relevant work as a dental

23  assistant.  (Id.)  But after considering the Plaintiff's age, education, work experience, and residual

24  functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the

25  national economy that the [Plaintiff] can perform."  (AR 18-19.)  Accordingly, the ALJ found that

26  Plaintiff was not disabled from March 29, 2007 through September 30, 2009, the date of the

27  decision, and had the residual functional capacity to perform the full range of sedentary work and

28  tolerate low stress work activity.  (AR 15, 19.)

### III.   SCOPE OF REVIEW

Section 205(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. § 405(g).  The scope of judicial review is limited.  See 42 U.S.C.A. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  See 42 U.S.C.A. § 405(g); 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

The Commissioner's decision must be affirmed upon review if it was: (1) supported by "substantial evidence" and (2) based on proper legal standards.  Uklov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id.; see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding substantial evidence in the record despite ALJ's failure to discuss every piece of evidence).  "Where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  However, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  If the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence, the court may reject the findings and set aside the decision to deny benefits.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

### IV.   REVIEW

In order to qualify for disability benefits the applicant must show that: (1) she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months;

and (2) the impairment renders the applicant incapable of performing the work that she previously performed or any other substantially gainful employment that exists in the national economy.  <u>See</u> 42 U.S.C. §423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  <u>Id.</u> The burden is on the applicant to establish disability.  <u>Terry v. Sullivan,</u> 903 F.2d 1273, 1275 (9th Cir. 1990).

The Secretary of the Social Security Administration set forth a five-step sequential evaluation process for determining whether a person has established his or her eligibility for disability benefits.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Applying the five-step process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset date of her disability; (2) has an impairment or combination of impairments that is considered "severe" based on the requirements in the Regulations (20 C.F.R. § 416.920(b)); (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No.4; (4) cannot perform her past relevant work as a dental assistant; but (5) retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.  (AR 14-20.)

Plaintiff puts forth three arguments in support of her motion for summary judgment: (1) the ALJ's application of the Grid Rules ("grids") was legal error; (2) the rejection of the opinions of treating physician Dr. James Gaudet and treating therapist Grace Caluya, LCSW, was legal error; and (3) that the ALJ's rejection of Plaintiff's subjective complaint testimony is based on legal error and is not supported by substantial evidence.  Pl.'s Memo P.&A. at 8-10; ECF. No. 18-1.

Defendant opposes Plaintiff's motion and also moves for summary judgment.  First, Defendant contends that the ALJ correctly applied the principles of res judicata pertaining to administrative decisions as outlined in <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988).  Def.'s Memo P.&A. at 3; ECF. No. 19-1. In order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding, a plaintiff must prove "changed circumstances" indicating a greater disability.  <u>Id</u>. at 691.  Thus, in this case, Defendant argues that the ALJ properly found that Plaintiff did not show "changed circumstances" and that the presumption of continuing non-disability was not rebutted.  Defendant further contends that the ALJ properly

1    relied on the grids; properly gave no weight to the check-the-form opinions of Dr. Gaudet and

2    Ms. Caluya; and properly rejected Plaintiff's testimony.  Id. at 5-9.

3                                    **V.   DISCUSSION**

4    **A.  Administrative Res Judicata**

5           Defendant argues that the ALJ correctly found that Plaintiff did not overcome the

6    presumption of continuing non-disability because Plaintiff did not present new medical evidence

7    to establish a change in circumstances.  Def.'s Memo P.&A. at 3; Doc. No. 19-1.  Plaintiff did not

8    address this issue.

9           As discussed above, Plaintiff was first denied disability benefits in March 2007.   (AR 12,

10   51.) In cases involving a prior final agency decision of non-disability, a presumption of

11   continuing non-disability arises with respect to any subsequent unadjudicated period of alleged

12   disability. Chavez , 844 F.2d at 693–64; Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) . In

13   order to overcome this presumption of continuing non-disability, the claimant "must prove

14   'changed circumstances' indicating a greater disability." Id. (quoting Taylor v. Heckler, 765 F.2d

15   872, 875 (9th Cir.1985)); cf. Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1172–73 (9th Cir.

16   2008) (where "[t]he entirety of the medical evaluations presented with respect to the [claimant's]

17   present application were conducted after [claimant's] initial disability determination [,][t]hese

18   evaluations necessarily presented new and material information not presented to the first ALJ")

19   (applying Chavez ) (emphasis added).

20          Social Security Acquiescence Ruling 97–4(9), 1997 WL 742758 (Dec. 3, 1997) ("AR 97–

21   4(9)") provides guidance for applying the Chavez decision:

22        In order to rebut the presumption of continuing nondisability, a claimant must prove
          "changed circumstances" indicating a greater disability. In addition, the court [in Chavez ]
23        indicated that where the claimant rebuts the presumption by proving a changed
          circumstance, principles of res judicata require that certain findings contained in the final
24        decision by the ALJ on the prior claim must be given some res judicata consideration in
          determining whether the claimant is disabled . . . The court concluded that where the final
25        decision on the prior claim, which found the claimant not disabled, contained findings of the
          claimant's residual functional capacity, education, and work experience, [the agency] may
26        not make different finding in adjudicating the subsequent disability unless there is new and
          material evidence . . . .
27

28   Although the presence of additional impairments rebuts the general presumption of non-

                                                11

disability, that alone is insufficient to rebut the specific findings of the prior decision. <u>Chavez</u>, 844 F.2d at 694. Instead, there must be "new and material" evidence relating to each specific finding. <u>See</u> AR 97–4(9).[2] When the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects her residual functional capacity, res judicata does not apply. <u>See</u> <u>Lester,</u> 81 F.3e at 827.

ALJ Godfrey previously found that Plaintiff was not disabled and that her severe mental impairments still allowed her to perform "low stress" and "simple, repetitive" work. (AR 58.) Applying the <u>Chavez</u> presumption, the current ALJ presumed that those limitations continued after March 28, 2007. (AR 11.)

ALJ Trembly's decision states that the <u>Chavez</u> presumptions apply because there is no new medical evidence to establish a change in Plaintiff's circumstances. (AR 11.) Although ALJ Trembly mentions the prior proceedings held by ALJ Godfrey, he never discusses them in detail, nor does the opinion contain a <u>Chavez</u> analysis. The opinion merely concludes that the <u>Chavez</u> presumptions apply. (AR 11.)

Plaintiff, however, did introduce new medical evidence that could be considered a change in circumstances. For instance, Plaintiff introduced a diagnosis of fibromyalgia by Dr. Frank Scavulli, MD on January 23, 2009. (AR 443.) Plaintiff also introduced new and different psychiatric symptoms that could constitute a change in the severity of her mental impairment. For example, Plaintiff introduced medical records and testimony that she experiences auditory hallucinations and suffers from paranoia. (AR 421-422.) After conducting a comprehensive psychological evaluation of Plaintiff, Dr. Gregory M. Nicholson diagnosed her with Psychotic Disorder Not Otherwise Specified. (AR 425.) It does not appear from the record that the

---

[2] Acquiescence Rulings are Social Security Administration policy statements issued in response to the Court of Appeals' holdings, and they "describe the administrative case and the court decision, identify the issue(s) involved, and explain how we will apply the holding, including, as necessary, how the holding relates to other decisions within the applicable circuit." 20 C.F.R. § 404.985(b). They are binding on the Social Security Administration, 20 C.F.R. § 402.35(b)(2); and are accorded deference by reviewing courts. <u>McNabb v. Barnhart</u>, 340 F.3d 943, 944–45 (9th Cir. 2003).

1   previous ALJ had evidence of Plaintiff's auditory hallucinations or paranoia at the time of the

2   earlier disability adjudication.  It also does not appear that Plaintiff had previously been

3   diagnosed with psychosis in addition to depression and anxiety disorders.

4       Moreover, because ALJ Trembly did not find that Plaintiff rebutted the presumption of non-

5   disability, he also did not continue to step two of the Aquiescence Ruling to determine if Plaintiff

6   presented "new and material evidence" relating to the ALJ's previous findings regarding

7   Plaintiff's residual functional capacity, education, or work experience.  AR 97–4(9).

8       The ALJ's conclusory finding that the <u>Chavez</u> presumption applies, without addressing  the

9   reasons for determining that Plaintiff did not demonstrate an increase in the severity of her

10  impairment or impairments; or the onset of an additional impairment was insufficient. <u>See</u>

11  <u>Johnson v. Astrue</u>, 358 Fed.Appx. 791, 793 (9th Cir. 2009) (citing  <u>Flores v. Shalala</u>, 49 F.3d 562,

12  571 (9th Cir.1995) (ALJ "may not reject significant probative evidence without explanation."

13  (internal quotation omitted)); SSR 96-8p.  Therefore, ALJ Trembly's determination that Plaintiff

14  did not overcome the presumption of non-disability is not supported by substantial evidence.  The

15  Court hereby recommends that Defendant's cross-motion for summary judgment on the basis that

16  the ALJ properly applied the presumption of continuing non-disability be **DENIED.**

17      Nevertheless, there is no indication the ALJ in this case only relied on the presumption of

18  continuing  non-disability in reaching his decision.  Rather, the ALJ conducted the required five-

19  step analysis before ultimately concluding that Plaintiff was not disabled from March 27, 2007

20  through September 30, 2009. (AR 11-20.)  That determination is discussed in more detail below.

21  **B.   Application of Grid Rules**

22      Plaintiff contends that the ALJ's application of the Grid Rules (the "grids") was an error of

23  law.  Pl.'s Memo P.&A. at 5.  In his cross-motion for summary judgment, Defendant refutes

24  Plaintiff's arguments and asserts that the ALJ properly relied on the grids to find that Plaintiff

25  could perform other work in the economy and thus was not disabled.  Def.'s Memo P.&A. at 6.

26      The Medical Vocational Guidelines, or grids, apply at the eighth step of the disability

27  cessation analysis, 20 C.F.R. § 404.1594(f)(8), and "present, in table form, a short-hand method

28  for determining the availability and numbers of suitable jobs for a claimant." <u>Tommasetti v.</u>

Astrue, 533 F.3d 1035, 1043 n. 4 (9th Cir. 2008) (internal citations omitted). Thus, "the grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). The ALJ, however, "must not apply the grids mechanically in borderline cases or where the claimants possess limitations that are not factored into the guidelines." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985). In other words, the ALJ may rely on the grids only when they "accurately and completely describe the claimant's abilities and limitations." Id.

The grids categorize jobs based on exertional, or physical strength, limitations. 20 C.F.R. Pt. 404, Subpt. P, app. 2 § 200.00(e); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). Non-exertional limitations, on the other hand, "are limitations that do not directly affect a claimant's strength." Burkhart, 856 F.2d at 1340. (citing 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(d),(e)). Non-exertional limitations include "mental, sensory, postural, manipulative or environmental limitations . . . that affect a claimant's ability to work." Id. (internal citation omitted).

The ALJ may rely on the grids even when a claimant has combined exertional and nonexertional limitations, if the nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.  See SSR 83-12 (1983) (It is only "[w]here the extent of erosion of the occupational base is not clear, [that] the adjudicator will need to consult a vocational resource").  Rather, "[t]he ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." Derosiers v. Sec. of Health and Human Services, 846 F.2d 573,  577 (9th Cir. 1988); see also Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding the ALJ properly relied on the grids where substantial evidence supported the ALJ's conclusion that the claimant's depression was not sufficiently severe to limit the range of work claimant could do).

At step three of the five-step sequential evaluation process, the ALJ found that Plaintiff had moderate limitation in social functioning and mild restrictions in concentration, persistence, or pace and activities of daily living.  (AR 14.) The ALJ found that Plaintiff's non-exertional limitations would not significantly impact her ability to perform work permitted by her exertional

1   limitations or preclude reliance on the grids at step five.  See Hoopai, 499 F.3d 1071, 1076 (9th

2   Cir. 2007) (holding that multiple mild and moderate depression related limitations did not

3   significantly limit the plaintiff's ability to do work beyond the exertional limitations).

4          Substantial evidence in the form of a psychological evaluation by Dr. Nicholson and a

5   review of the record by Dr. Barbara A. Smith supports the ALJ's conclusion that Plaintiff's

6   depression was not sufficiently severe such that it significantly affects her ability to work beyond

7   the exertional limitations.  (AR 325, 426-27.)  Thus, the Court concludes that the ALJ properly

8   relied on the grids to find that Plaintiff could perform other work in the national economy in

9   making his determination that she is "not disabled."  Accordingly, the Court recommends that

10  Plaintiff's motion for summary judgment on the basis that the ALJ applied the grids in error be

11  **DENIED**.

12  **C.    Rejection of Treating Physician and Therapist's Opinions**

13         Plaintiff next argues that the rejection of the opinions of treating physician, Dr. James

14  Gaudet, and treating therapist, Grace Caluya, LCSW, was in error.  Pl.'s Memo P.&A. at 5.  The

15  ALJ determined that Plaintiff suffers from major depressive disorder but that she has the residual

16  functional capacity to perform the full range of sedentary work and can tolerate low stress work.

17  (AR 14.)  The ALJ relied on numerous treatment notes written by Plaintiff's treating psychiatrist

18  and therapist.  The ALJ also relied on the opinions of State agency medical consultants, as well as

19  the State agency's requested psychological evaluation.  (AR 16-17.)  Defendant contends that the

20  ALJ did not commit error in discounting the opinions of Dr. Gaudet and Ms. Caluya as set forth

21  in the July 14, 2009 MRFCF.  Def.'s Memo P.&A. at 6.

22         The medical opinion of a treating physician is entitled to special weight.  Burkhart, 856 F.2d

23  at 1339; Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988). When the ALJ wishes to disregard

24  the treating physician's opinion, "he must set forth specific, legitimate reasons for doing so, and

25  this decision must itself be based on substantial evidence." Cotton v. Bowen, 799 F.2d 1403,

26  1408 (9th Cir. 1986); see also McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989);

27  Rodriguez v. Bowen, 876 F.2d 759, 761–62 (9th Cir. 1989). When presented with conflicting

28  ///

1    medical opinions, it is up to the ALJ to "determine credibility and resolve the conflict."  Batson,

2    359 F.3d at 1195.

3         The ALJ properly compared the opinions of Dr. Gaudet and Ms. Caluya with the record as a

4    whole.  See 20 C.F.R. § 404.1527(d)(4) (the more consistent an opinion is with the record as a

5    whole, the more weight is given to that opinion).  It was proper for the ALJ to give their opinions

6    as presented on the MRFCF no controlling weight since there was substantial evidence showing

7    that the opinions were inconsistent with the record as a whole, including their own previous

8    progress reports.  See 20 C.F.R. §§ 404.1527(d) (providing that weight given to medical opinions

9    is based, in part, on supportability by acceptable clinical and laboratory diagnostic techniques,

10   and consistency with the other substantial evidence); Tonapetyan, 242 F.3d at 1149 ("ALJ need

11   not accept a treating physician's opinion . . . unsupported by clinical findings.").  In addition, the

12   form was completed by Ms. Caluya—a social worker—and pursuant to the regulations she is not

13   considered an "acceptable medical source."  20 C.F.R. § 404.1513(a), (d). The regulations treat

14   "[p]ublic and private social welfare agency personnel" as "other sources." 20 C.F.R.

15   § 404.1513(d)(3).

16        Plaintiff further argues that the ALJ failed to point out where the MRFCF is inconsistent and

17   how it is not supported by the medical record.  Pl.'s Memo P.&A. at 5.  The ALJ, however, did

18   point out specific inconsistencies and explained how the MRFCF is not supported by the medical

19   record when he cited Plaintiff's visits to Dr. Gaudet on March 18, 2009, and to Ms. Caluya on

20   April 13, 2009.  (AR 18.)  Accordingly, the Court finds that the ALJ provided specific and

21   legitimate reasons for rejecting the opinions of Dr. Gaudet and Ms. Caluya and therefore the

22   rejection of their July 14, 2009 opinion was not error.  The Court, therefore, recommends that

23   Plaintiff's motion for summary judgment on the basis that the ALJ's rejection of Dr. Gaudet and

24   Ms. Calyua's MRFCF opinion was error be **DENIED**.

25   **C.    Rejection of Plaintiff's Subjective Complaint Testimony**

26        Lastly, Plaintiff argues that the ALJ's rejection of Plaintiff's subjective complaint testimony

27   is based on legal error and is not supported by substantial evidence.  Pl.'s Memo P.&A. at 9.

28   ///

1   Defendant contends that the ALJ properly discounted Plaintiff's subjective allegations of

2   disabling limitations.  Def.'s Memo P.&A. at 7.

3        The Ninth Circuit has established a two-step analysis for the ALJ to evaluate the credibility

4   of a plaintiff's testimony regarding subjective pain.  Vasquez v. Astrue, 575 F.3d 586, 591 (9th

5   Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

6   must determine whether the claimant has presented objective medical evidence of an impairment

7   or impairments that could reasonably be expected to produce the pain or other symptoms alleged.

8   Vasquez, 575 F.3d at 591.

9        Second, if the claimant satisfies the first step and there is no affirmative evidence of

10  malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and

11  convincing reasons" for doing so.  Id.; see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)

12  (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  "In order for the ALJ to find

13  [claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings

14  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

15  claimant's testimony.'"  Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir.

16  2010) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).  Moreover, the ALJ may

17  not discredit a claimant's testimony of pain and deny disability benefits solely because the degree

18  of pain alleged is not supported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

19  341, 346–47 (9th Cir.1991). "In weighing a claimant's credibility," the ALJ may consider the

20  "inconsistencies either in his testimony or between his testimony and his conduct, his daily

21  activities, his work records, and testimony from physicians and third parties concerning the

22  nature, severity and effect of the symptom of which he complains ." Light v. Soc. Sec. Admin.,

23  119 F.3d 789, 792 (9th Cir.1997).

24       In this case the ALJ found Plaintiff's "medically determinable impairments could

25  reasonably be expected to cause the alleged symptoms." (AR 17.)  Nonetheless, he also found

26  that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these

27  symptoms are not credible to the extent they are inconsistent with the above residual functional

28  capacity assessment."  (Id.)  Since the ALJ found Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  See Vasquez, 572 F.3d at 591.

The ALJ's first reason for rejecting Plaintiff's allegations of disabling pain, symptoms, and limitations was that "the objective medical evidence of record does not support impairments likely to produce disabling pain or limitation."  (AR 18.)  Although medical evidence is a factor that the ALJ can consider regarding Plaintiff's credibility analysis, an ALJ "may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain."  Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); see also Burch, 400 F.3d at 681 (noting that "lack of medical evidence cannot form the sole basis for discounting pain testimony").

Here, the ALJ did not specify what medical evidence in the record contradicts Plaintiff's subjective complaints, and this is error.  The ALJ merely concluded that "the objective medical evidence of record does not support impairments likely to produce disabling pain or limitations." (AR 18.)  In citing to medical evidence as part of a credibility analysis, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record.  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination").  Instead, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony".  Id.  Accordingly, the ALJ's general dismissal of Plaintiff's subjective complaints due to lack of objective medical evidence does not, by itself, constitute a clear and convincing reason for discrediting her testimony.  See Varney v. Secretary, 846 F.2d 581, 584 (9th Cir.1988); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986); see also Burch, 400 F.3d at 681.

The ALJ's second reason for rejecting Plaintiff's credibility was that "there is no evidence [she] underwent regular treatment employing a regimen or therapy consistent with the alleged severity of her complaints for any period of twelve or more continuous months, which could reasonably be expected from one suffering unrelenting pain, debilitating symptoms, and severe functional limitations such as those alleged by [Plaintiff]." (AR 18.)  Yet during the hearing the

1    ALJ neither questioned Plaintiff about receiving this type of regimen or therapy, nor did he

2    question Plaintiff as to why she was not receiving such regular treatment.  See SSR 96-7p, 1996

3    WL 374186 at 7-8 (Jul. 7, 1996) (stating that an "adjudicator must not draw any inferences about

4    an individual's symptoms and their functional effects from a failure to seek or pursue regular

5    medical treatment without first considering any explanations that the individual may provide, or

6    other information in the case record, that may explain infrequent or irregular medical visits or

7    failure to seek medical treatment" including inability to pay, whether "[t]he individual's daily

8    activities may be structured so as to minimize symptoms to a tolerable level or eliminate them

9    entirely," and whether medication may relieve symptoms).  In fact, during the hearing the ALJ

10   specifically stated that he found Plaintiff's testimony "very credible."  (AR 47.)  And in his

11   decision, the ALJ did not identify any specific facts in the record suggesting Plaintiff's treatment

12   was inconsistent with the level of symptoms and limitations experienced.  Smolen v. Chater, 80

13   F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is

14   not credible and what facts in the record lead to that conclusion.").  Moreover, there is no

15   evidence that Plaintiff "failed to seek treatment or follow a prescribed course of treatment" that

16   would support an adverse credibility determination.  Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.

17   2007).  Throughout the medical record sources state that Plaintiff was compliant with her

18   treatment plan.  (See AR 381; 503; 520.)  Therefore, it appears that Plaintiff's treatment was

19   appropriate for her condition and that she did not fail to undergo treatment recommended by her

20   doctors.

21        Lastly, the ALJ rejected Plaintiff's credibility because she did not allege an inability to

22   provide for her own care.  (AR 18.)  The ALJ cited a consultative examination by Dr. Nicholson

23   on May 1, 2008 that reported Plaintiff's activities of daily living consisted of doing household

24   chores, gardening, cooking, dressing and bathing herself, going to the store and running errands,

25   as well as her ability to drive, pay bills, and handle cash appropriately.  (Id.)  It is well

26   established, however, that social security claimants need not be "utterly incapacitated to be

27   eligible for benefits."  Fair v Bowen, 885 F.2d 597, 603 (9th Cir. 2007); see also Vertigan v.

28   Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere

1   fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

2   or limited walking for exercise, does not in any way detract from her credibility as to her overall

3   disability.").  Generally, the ALJ does not consider "activities like taking care of yourself,

4   household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be

5   substantial gainful activities.  20 C.F.R. § 404.1572(c).   Although daily activities may be grounds

6   for an adverse credibility finding "if a claimant is able to spend a substantial part of his day

7   engaged in pursuits involving the performance of physical functions that are transferable to a

8   work setting," the ALJ must make "specific findings relating to [the daily] activities" and their

9   transferability to conclude that a claimant's daily activities warrant an adverse credibility

10  determination.  Fair, 885 F.2d at 602; Burch, 400 F.3d at 676; see also Orn, 495 F.3d at 625.

11       Although the ALJ cited Dr. Nicholson's report regarding Plaintiff's daily activities, he failed

12  to state specific, contrary findings in her testimony that would undermine her credibility.  The

13  only daily activity alluded to in her testimony was driving.  Plaintiff testified that she no longer

14  feels comfortable driving because she was in an accident and experiences distracting auditory

15  hallucinations (AR 42-43).  This testimony is substantiated by the medical record.  (AR 325).

16  The ALJ also failed to mention specific findings relating to Plaintiff's daily activities and their

17  transferability to a work setting.  See Fair, 885 F.2d at 602 (explaining that if a claimant spends a

18  substantial part of his or her day engaged in pursuits involving the performance of functions that

19  are transferable to a work setting, a specific finding as to that fact may be sufficient to discredit

20  an allegation of disabling limitations).  Here, the ALJ failed to establish whether the Plaintiff

21  spent a substantial part of her day participating in these activities.  See Fair, 885 at 602.

22       In addition, the ALJ failed to provide a "narrative discussion" that "contain[s] specific

23  reasons for the finding . . . supported by the evidence in the case record"; nor was his brief

24  notation "sufficiently specific to make clear . . . the weight the adjudicator gave to the

25  individual's statements and the reasons for that weight,' as he is required to do.  Robbins v. Soc.

26  Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citing SSR 96-7p at *2; SSR 96-8p, 1996 WL

27  374184, at *7 (Jul. 2, 1996)).

28  ///

1    Accordingly, the Court finds that the ALJ failed to set forth clear and convincing reasons

2    supported by substantial evidence in the record.  Plaintiff is therefore entitled to summary

3    judgment on her claim that the ALJ erred in failing to credit her testimony regarding her

4    subjective complaints.

5                          **VI.  CONCLUSION AND RECOMMENDATION**

6    As a general rule, remand is warranted where additional administrative proceedings could

7    remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

8    Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000); Kail v. Heckler, 722

9    F.2d at 1497.

10   In this case, the ALJ failed to explain with sufficient specificity the basis for his reliance on

11   the Chavez presumption and his rejection of Plaintiff's credibility and allegations of disabling

12   pain, symptoms, and limitations.  Having reviewed the matter, the undersigned Magistrate Judge

13   **recommends** that Plaintiff's Motion for Summary Judgment be **DENIED** in part and

14   **GRANTED** in part, and that Defendant's Cross-Motion for Summary Judgment be **DENIED**.  It

15   is **recommended** that this case be **REMANDED** to the Social Security Administration for further

16   proceedings consistent with this decision.

17   This Report and Recommendation of the undersigned Magistrate Judge is submitted to the

18   United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

19   **IT IS ORDERED** that no later than **August 6, 2012,** any party to this action may file

20   written objections with the Court and serve a copy to all parties.  The document should be

21   captioned "Objections to Report and Recommendation."

22   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

23   and served on all parties within seven days of being served with the objections.

24   **IT IS SO ORDERED.**

25

26   Dated: July 20, 2012

27   _____
     The Honorable Bernard G. Skomal
     United States Magistrate Judge

28